# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **MICHAEL JOHN PFUNDSTEIN,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **HOME DEPOT U.S.A., INC.; JAMI JOHNSON, in her individual capacity; COTTONWOOD HEIGHTS; COTTONWOOD HEIGHTS POLICE DEPARTMENT; ERNEST ROBERT RUSSO, JR., in his official capacity; J. GRIFFITH, in his individual capacity; and KENYON KAWA, in his individual capacity,** | **Case No. 2:21-cv-00340-BSJ-JCB** |
| **Defendants.** | **District Judge Bruce S. Jenkins** **Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B). Before the court is pro se Plaintiff Michael John Pfundstein's ("Mr. Pfundstein") complaint.[1] Mr. Pfundstein has been permitted to proceed in forma pauperis under 28 U.S.C. § 1915 ("IFP Statute").[2] Accordingly, the court will review the sufficiency of Mr. Pfundstein's complaint under the authority of the IFP Statute. Based upon the analysis set forth below, the court concludes that Mr. Pfundstein fails to state any federal claims. Consequently, the court

---

[1] ECF No. 7.

[2] ECF No. 6.

declines to address the merits of his state-law claims. However, the court provides Mr. Pfundstein with an opportunity to amend his complaint.

## BACKGROUND

The following background is based upon the allegations contained in Mr. Pfundstein's complaint. On October 11, 2018, Defendant Jami Johnson ("Ms. Johnson"), an employee of Defendant Home Depot U.S.A., Inc. ("Home Depot"), contacted Defendant J. Griffith ("Officer Griffith"), a police officer employed by Defendant Cottonwood Heights Police Department ("CHPD"), "to report that a fraud had just been committed[,] and the suspect['s] vehicle was a red Mercury Mountaineer."[3] After leaving the Home Depot store where Ms. Johnson worked, Mr. Pfundstein was stopped in his vehicle by Officer Griffith, who was driving a CHPD police vehicle.[4] Officer Griffith approached Mr. Pfundstein's vehicle and informed him that he was being stopped because Officer Griffith "had received a call from loss prevention at Home Depot and wanted to know what was going on."[5] Mr. Pfundstein informed Officer Griffith that "he had not broken any laws and had simply made a purchase at Home Depot and had to return the items to receive cash."[6] Officer Griffith then instructed Mr. Pfundstein to get out of his vehicle and

---

[3] ECF No. 7, ¶ 11.

[4] *Id.*, ¶ 12.

[5] *Id.*, ¶ 13.

[6] *Id.*, ¶ 14.

asked him some questions.[7] Officer Griffith "discussed the situation with an unknown officer and concluded that there was no probable cause."[8]

Mr. Pfundstein alleges, based upon "information and belief," that at some point thereafter, "[Ms.] Johnson made a statement to [Officer] Griffith with no corroborating evidence, that the store credit [Mr.] Pfundstein had purchased the returned items with was fraudulent."[9] After Mr. Pfundstein "invoked his Maranda [sic] rights," Officer Griffith instructed him to return to his vehicle.[10] Later, Officer Griffith instructed Mr. Pfundstein to step out of his vehicle a second time and placed him under arrest.[11]

Officer Griffith searched Mr. Pfundstein and "removed $182 in cash and a Home Depot store credit valued at $427 from [Mr.] Pfundstein's pocket, depriving [Mr.] Pfundstein of said property permanently."[12] Officer Griffith "also found an expired credit card belonging to a third party in [Mr.] Pfundstein's wallet."[13] Mr. Pfundstein alleges that "[t]here was no reason to believe the card was ever used or attempted to be used or could possibly be used to violate the fraudulent use statute."[14] Mr. Pfundstein further alleges that Ms. Johnson "conspired with

---

[7] *Id.*, ¶ 16.

[8] *Id.*, ¶ 17.

[9] *Id.*, ¶ 18.

[10] *Id.*, ¶ 19.

[11] *Id.*, ¶ 20.

[12] *Id.*, ¶ 21.

[13] *Id.*, ¶ 22.

[14] *Id.*

[Officer] Griffith to permanently deprive [Mr.] Pfundstein of his property by accepting the cash and store credit taken from [Mr.] Pfundstein's pocket."[15] Mr. Pfundstein was then placed in the back of a police car,[16] and his vehicle was searched and towed.[17]

Thereafter, Mr. Pfundstein was transported to the Salt Lake County Jail where he was "booked . . . on the charges of unlawful acquisition of a financial card without consent . . . and financial transaction with intent to defraud."[18] Later that evening, Mr. Pfundstein was released and, "according to his release papers[,] there was no probable cause."[19] When Mr. Pfundstein was released, "he was told to call the court every week until the statute of limitations (2 years) ran out in case the district attorney files charges in the future."[20] Mr. Pfundstein then "paid $228 to recover his car from the impound."[21]

The following day, Mr. Pfundstein called the CHPD "and was told by officer D. Bartlett that since the cash and store credit [were] obtained illegally, [they were] given to Home Depot."[22] Mr. Pfundstein alleges, based upon "information and belief," that "it is the policy or

---

[15] *Id.*, ¶ 23.

[16] *Id.*, ¶ 24.

[17] *Id.*, ¶ 25.

[18] *Id.*, ¶ 26.

[19] *Id.*, ¶ 27.

[20] *Id.*, ¶ 28.

[21] *Id.*, ¶ 29.

[22] *Id.*, ¶ 30.

custom of the CHPD to take money and store credits (personal property) from accused citizens and[,] without booking [them] into evidence[,] give [them] to the accuser without due process."[23]

On August 23, 2019, Mr. Pfundstein "went to the Cottonwood Heights city hall and submitted a notice of claim to the city for $889," which was the "value of the property taken from him and the cost of recovering his vehicle."[24] The same day, Mr. Pfundstein submitted a GRAMA request to the CHPD for "a copy of the case file from the investigation."[25]

After Mr. Pfundstein received the case file on September 10, 2019, he "became aware on information and belief" that on February 11, 2019, the Salt Lake County District Attorney's Office "had closed the case without filling [sic] charges."[26] Mr. Pfundstein alleges that, "[o]n information and belief[,] there were no entries in the case file from" February 11, 2019, until September 16, 2019.[27]

Mr. Pfundstein alleges that on September 16, 2019, Officer Griffith, "without any basis in law or fact and in furtherance of a personal vendetta," went to the Utah State Prison "to interview the third party who stated that he had lost the credit card[,] . . . and he did not know what happened to it."[28] Mr. Pfundstein maintains that "[a] reasonable police officer in [Officer]

---

[23] *Id.*, ¶ 31.

[24] *Id.*, ¶ 34.

[25] *Id.*, ¶ 35.

[26] *Id.*, ¶ 36.

[27] *Id.*, ¶ 37.

[28] *Id.*, ¶ 38.

Griffith's position would have concluded that mere possession of another's expired credit card without intent to use it to violate the fraudulent use statute is not a violation of the law."[29]

Mr. Pfundstein spoke with Ms. Johnson on October 16, 2019, and Ms. Johnson "stated that after speaking to her manager and the loss prevention officer at the store that issued the store credit, . . . there was no report or any other evidence that the card issued was obtained fraudulently."[30] Mr. Pfundstein alleges that "[d]espite learning that there was no evidence whatsoever to corroborate [Ms.] Johnson's original statement that the store credit that was used was fraudulent," Officer Griffith "pushed for the district attorney's office to file charges even though a reasonable police officer in his position could not have concluded that a crime had been committed."[31]

Thereafter, Mr. Pfundstein "called the court on a regular basis only to be told no charges had been filed [sic]."[32] Mr. Pfundstein asserts that "due to the possibility of criminal charges being filed" for over a year, he "suffered from severe emotional distress, anxiety, anguish, depression, and loss of enjoyment of life."[33]

In November 2019, Mr. Pfundstein was informed that charges had been filed and he was given a court date.[34] Mr. Pfundstein alleges that on November 20, 2019, Officer Griffith "drafted

---

[29] *Id.*

[30] *Id.*, ¶ 39.

[31] *Id.*, ¶ 40.

[32] *Id.*, ¶ 41.

[33] *Id.*, ¶ 42.

[34] *Id.*, ¶ 43.

. . . and filed in [t]he Third District Court of Utah a criminal complaint falsely accusing [Mr. Pfundstein] of multiple crimes."[35] Mr. Pfundstein further alleges that Defendant Kenyon Kawa ("Officer Kawa"), a police officer employed by CHPD, signed the complaint "under penalty of perjury."[36] Mr. Pfundstein's preliminary hearing was held on November 2, 2020, at which "both [Ms.] Johnson and [Officer] Griffith testified . . . with the intent to have [Mr.] Pfundstein convicted of a crime that was never committed."[37] Mr. Pfundstein alleges that on March 9, 2021, "[a]fter 12 court appearances," "the felony charge was dropped by [J]udge Kristine Johnson for no probable cause to bind over."[38]

Based upon those events, Mr. Pfundstein filed the instant lawsuit against: (1) Home Depot; (2) Ms. Johnson; (3) Ernest Robert Russo, Jr., Chief of Police of the CHPD ("Chief Russo"), in his official capacity; (4) the CHPD; (5) the City of Cottonwood Heights ("Cottonwood Heights"); (6) Officer Griffith, in his individual capacity; and (7) Officer Kawa, in his individual capacity (collectively, "Defendants"). Mr. Pfundstein asserts causes of action under 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments, as well as malicious prosecution. He also asserts state-law causes of action for malicious prosecution, violations of the Utah Constitution, and conversion.

---

[35] *Id.*, ¶ 44.

[36] *Id.*

[37] *Id.*, ¶ 45.

[38] *Id.*, ¶ 46.

## **LEGAL STANDARDS**

Whenever the court authorizes a party to proceed without payment of fees under the IFP Statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."[39] In determining whether a complaint fails to state a claim for relief under the IFP Statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[40] Under that standard, the court "look[s] for plausibility in th[e] complaint."[41] More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[42]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.[43] Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint

---

[39] 28 U.S.C. § 1915(e)(2)(B)(ii).

[40] *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

[41] *Id.* at 1218 (quotations and citation omitted) (second alteration in original).

[42] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (second and third alterations in original) (other quotations and citation omitted).

[43] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[44] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[45] Rule 8 requires, at least, that the allegations of a complaint put the defendant fairly on notice of the basis for the claims against it.[46] Indeed, the twin purposes of a complaint are to give the opposing party that notice so that it may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.[47]

In analyzing Mr. Pfundstein's complaint, the court is mindful that he is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[48] However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant,"[49] and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[50] Indeed, as the United States Court of Appeals for the Tenth Circuit stated:

---

[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[45] *Id*.

[46] *Twombly*, 550 U.S. at 555.

[47] *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.* 891 F.2d 1473, 1480 (10th Cir. 1989).

[48] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[49] *Bellmon*, 935 F.2d at 1110.

[50] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

> The broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.[51]

After reviewing a pro se plaintiff's complaint under the IFP Statute, the court may dismiss the complaint for failure to state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[52]

## ANALYSIS

Mr. Pfundstein's complaint contains causes of action under 42 U.S.C. § 1983 and state law. As demonstrated below: (I) Mr. Pfundstein fails to state claims for violations of federal law; and, consequently, (II) the court declines to address the merits of his state-law claims because, without any viable federal claims, the court should decline to exercise supplemental jurisdiction over his state-law claims. Thereafter, the court (III) provides Mr. Pfundstein with an opportunity to amend his complaint.

**I.      Mr. Pfundstein's Section 1983 Claims Fail.**

Mr. Pfundstein asserts numerous causes of action under section 1983. Section 1983 imposes civil liability upon any person who, acting under color of state law, deprives another of

---

[51] *Bellmon*, 935 F.2d at 1110 (citations omitted).

[52] *Kay*, 500 F.3d at 1217 (quotations and citation omitted).

their federally protected rights.[53] Section 1983 does not confer any substantive rights but merely serves as a vehicle for vindicating rights secured by the United States Constitution or federal statutes.[54] To state a claim under section 1983, Mr. Pfundstein must allege a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law.[55]

Below, the court addresses Mr. Pfundstein's section 1983 claims in the following order: (A) claims against Home Depot and Ms. Johnson; (B) claims against Chief Russo; (C) claims against the CHPD; (D) claims against Cottonwood Heights; (E) First Amendment claims; (F) Fifth Amendment due process claims; (G) Fourteenth Amendment due process claims; and (H) Fourth Amendment claims. Based upon the following analysis, all of Mr. Pfundstein's section 1983 claims fail.

### A.    Home Depot and Ms. Johnson

To the extent Mr. Pfundstein asserts section 1983 claims against Home Depot and Ms. Johnson, those claims fail. Mr. Pfundstein's section 1983 claims cannot succeed against Home Depot and Ms. Johnson because they are private parties, which are not subject to the strictures of section 1983.[56] Although true that, in some cases, a non-state actor can be held liable for civil

---

[53] 42 U.S.C. § 1983.

[54] *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980).

[55] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[56] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014) ("'[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999))); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) ("[T]he only proper defendants in a Section 1983 claim are those who

rights violations under section 1983 if it conspired with a state actor in committing those violations,[57] Mr. Pfundstein fails to make the requisite factual allegations to plead such a conspiracy. Indeed, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."[58] Other than naming Home Depot as a defendant and asserting that it "is responsible for the maintenance, training, control, and supervision of" its employees,[59] Mr. Pfundstein makes no allegations that Home Depot had any involvement with the events alleged in the complaint. Additionally, Mr. Pfundstein's conclusory allegations about Ms. Johnson's involvement with those events fail to show any sort of agreement or concerted action among her and any state actors. For those reasons, Mr. Pfundstein's section 1983 claims against Home Depot and Ms. Johnson fail.

### B.     Chief Russo

Mr. Pfundstein's section 1983 claims against Chief Russo fail because Mr. Pfundstein sues Chief Russo in only an official capacity and names the municipality for which Chief Russo

---

'represent [the state] in some capacity . . . .'" (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)) (second alteration in original) (other quotations and citation omitted)); *Hunter v. Midland Mortg.*, No. CV-15-1266-R, 2015 WL 8207522, at *1 (W.D. Okla. Dec. 7, 2015) ("Plaintiff's reliance on 42 U.S.C. § 1983 is misplaced, because § 1983 creates a private cause of action when persons acting under color of state law violate a person's constitutional rights. A private person is not liable under 42 U.S.C. § 1983, and therefore Plaintiff cannot rely on this section to invoke the Court's jurisdiction.").

[57] *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990).

[58] *Id.* (quotations and citations omitted).

[59] ECF No. 7, ¶ 5.

works (i.e., Cottonwood Heights) as a defendant. In the context of a section 1983 action, the

United States Supreme Court has stated:

> Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, . . . a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.[60]

Because Mr. Pfundstein asserts section 1983 claims against Chief Russo in only an

official capacity and names Cottonwood Heights as a defendant, Mr. Pfundstein's section 1983

claims against Chief Russo are duplicative of his section 1983 claims against Cottonwood

Heights. Therefore, Mr. Pfundstein's section 1983 claims against Chief Russo fail.[61]

---

[60] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978) (other citation and emphasis omitted); *see also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983, we've recognized, is essentially another way of pleading an action against the county or municipality they represent.").

[61] Even if Mr. Pfundstein had asserted his section 1983 claims against Chief Russo in an individual capacity, those claims would still fail because Mr. Pfundstein has not alleged that Chief Russo had any personal involvement in events described in the complaint. When alleging a section 1983 claim against a government agent in an individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. *Respondeat superior* cannot form the basis of the liability. *Id.* Put another way, liability in a section 1983 action is personal in nature and, therefore, to be liable, a defendant must have been personally involved in the wrongful conduct. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Arocho v. Nafziger*, 367 F. App'x 942, 956 (10th Cir. 2010). As it relates to Chief Russo, Mr. Pfundstein's complaint names Chief Russo as a defendant and alleges that Chief Russo "is responsible for the maintenance, training, control, and supervision of law enforcement personnel employed and controlled by the CHPD." ECF No. 7, ¶ 8. Other than that, Mr. Pfundstein's complaint makes no further mention of Chief Russo. Consequently, Mr.

### C.     The CHPD

Mr. Pfundstein's section 1983 claims against the CHPD fail because, as a governmental sub-unit of Cottonwood Heights, the CHPD is not subject to suit under section 1983. Indeed, the Tenth Circuit has stated that "[g]enerally, governmental sub-units are not separate suable entities that may be sued under § 1983."[62] That proposition holds true for police departments.[63] Therefore, Mr. Pfundstein's section 1983 claims against the CHPD fail.

### D.     Cottonwood Heights

Mr. Pfundstein's section 1983 claims against Cottonwood Heights fail because he does not identify any policy or custom implemented by Cottonwood Heights that is linked to his alleged injuries and was implemented by a person with policy-making authority.

> A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.[64]

---

Pfundstein fails to show—or even allege—that Chief Russo had any personal involvement in the events described in the complaint.

[62] *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010).

[63] *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("The 'City of Denver Police Department' is not a separate suable entity, and the complaint will be dismissed as to it."); *Keilbaugh v. Salt Lake City Police Dep't*, No. 2:19-CV-00017, 2020 WL 2307633, at *1 n.1 (D. Utah May 8, 2020) ("Although Plaintiff names Salt Lake City Police Department as a Defendant, the Salt Lake City Police Department is a governmental sub-unit of Salt Lake City Corporation. As such, it is not a separate legal entity capable of being sued or filing suit.").

[64] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993); *see also Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

In this context, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . , unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."[65]

Mr. Pfundstein's sole allegation concerning a policy or custom of Cottonwood Heights states: "On information and belief, it is the policy or custom of the CHPD to take money and store credits (personal property) from accused citizens and[,] without booking [them] into evidence[,] give [them] to the accuser without due process."[66] Such a conclusory allegation is insufficient under Rule 8(a)(2) and Rule 12(b)(6) to show such an actual policy or custom exists that is linked to Mr. Pfundstein's alleged injuries and was implemented by someone with the authority to make policy decisions.[67] Mr. Pfundstein merely speculates, "[o]n information and

---

[65] *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Rowley v. Morant*, No. 10CV1182 WJ/GBW, 2014 WL 11430980, at *1 (D.N.M. July 14, 2014) ("In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.").

[66] ECF No. 7, ¶ 31.

[67] *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (concluding, where the plaintiff's complaint included only an allegation that a policy existed, that such an "allegation is the type of 'formulaic recitation of the elements of a cause of action' that is insufficient to meet the *Twombly* pleading standard" (quoting *Twombly*, 550 U.S. at 555)); *Dalcour v. City of Lakewood*, 492 F. App'x 924, 930 (10th Cir. 2012) ("Plaintiffs do not identify which specific policies or customs may have motivated [the defendant]'s actions. Without more, this is exactly the 'formulaic recitation of the elements of a cause of action [that] will not do.'" (quoting *Twombly*, 550 U.S. at 555) (second alteration in original)); *Lewis v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 425 F. App'x 723, 726 (10th Cir. 2011) (concluding, where the plaintiff's "allegations [did] not identify any official . . . policy or custom," that the plaintiff "failed to show that [the defendant was] liable based on an official policy or custom" under section 1983); *Deadrich v. Salt Lake Cnty.*, No. 2:20-CV-00108, 2020 WL 5531259, at *2 n.35 (D. Utah Sept. 15, 2020) (determining that conclusory allegations about a policy or custom, including those based upon information and

belief,"[68] that Cottonwood Heights implemented such a policy or custom based upon the isolated allegations of his complaint, which is an inadequate ground for imposing municipal liability upon Cottonwood Heights. Indeed, his allegations amount to nothing more than a formulaic recitation of the elements. Thus, Mr. Pfundstein's section 1983 claims against Cottonwood Heights fail.

### E.    First Amendment

In addition to the foregoing reasons supporting the dismissal of Mr. Pfundstein's section 1983 claims as to certain Defendants, his section 1983 claim for First Amendment violations fails as to all Defendants for independent reasons. First, Mr. Pfundstein's one-sentence claim that his First Amendment rights were somehow violated through "the enactment of overly vague laws"[69] is neither developed in any meaningful way nor supported by any well-pleaded factual allegations. Thus, that claim fails under Rule 8(a)(2) and Rule 12(b)(6). Second, even if the court considers the substance Mr. Pfundstein's claim, it still fails. Although true that Mr. Pfundstein could challenge a statute under the First Amendment for vagueness,[70] his complaint fails to identify a statutes or statutes that he is challenging on that ground. For those reasons, Mr. Pfundstein's section 1983 claim for First Amendment violations fails as it relates to all Defendants.

---

belief, "are nothing more than a formulaic recitation of the elements of a § 1983 claim and are— standing alone—insufficient to satisfy *Twombly*'s pleading standard").

[68] ECF No. 7, ¶ 31.

[69] *Id.*, ¶ 57

[70] *See, e.g.*, *Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1201-02 (10th Cir. 2005).

### F.    Fifth Amendment Due Process

Mr. Pfundstein's section 1983 claim under the Due Process Clause of the Fifth

Amendment fails as to all Defendants because his complaint does not contain any allegations

about actions taken by the federal government or federal officials. It is well settled that "[t]he

Due Process Clause of the Fifth Amendment applies only to action by the federal government."[71]

Because any government officials named in Mr. Pfundstein's complaint are state, not federal,

actors, the Due Process Clause of the Fifth Amendment cannot be applicable here. "Moreover,

because § 1983 imposes liability only for actions taken under state law, even if there were a

federal actor involved there would be no Fifth Amendment claim under § 1983."[72] Accordingly,

Mr. Pfundstein's section 1983 claim under the Due Process Clause of the Fifth Amendment fails.

### G.    Fourteenth Amendment Due Process

Mr. Pfundstein alleges conclusory section 1983 claims for violations of procedural and

substantive due process under the Fourteenth Amendment for: (1) malicious prosecution,[73] and

---

[71] *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013); *see also Parnisi v. Colo. State Hosp.*, 992 F.2d 1223 (Table), 1993 WL 118860, at *1 (10th Cir. April 15, 1993)* ("The Fifth Amendment due process clause only protects against due process violations caused by the federal government.").

[72] *Koessel*, 717 F.3d at 748 n.2.

[73] As an initial matter with respect to Mr. Pfundstein's federal malicious prosecution claims, the court notes that those claims could be viable only against Officer Griffith and Officer Kawa because, based upon the analysis set forth above, Mr. Pfundstein cannot state viable section 1983 claims against the remaining Defendants—Home Depot, Ms. Johnson, Chief Russo, the CHPD, and Cottonwood Heights. Although Mr. Pfundstein has not named as a defendant any prosecutor or prosecuting authority, his federal malicious prosecution claims could still be asserted against Officer Griffith and Officer Kawa because he alleges that they misrepresented facts to the prosecuting authority. *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004) ("This Court has previously held that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor,

(2) "the theft of personal property by . . . [D]efendants."[74] Based upon the following analysis, both of Mr. Pfundstein's claims fail.

### 1.   Malicious Prosecution

Mr. Pfundstein's section 1983 claim under the Due Process Clause of the Fourteenth Amendment for malicious prosecution fails because: (a) a more specific provision—the Fourth Amendment—applies to that claim; and (b) he fails to demonstrate any alternative theory for liability under the Fourteenth Amendment. The court addresses each of those reasons below.

#### a.   The Fourth Amendment Applies to Mr. Pfundstein's Claim for Malicious Prosecution.

The Tenth Circuit has "repeatedly recognized . . . that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be the Fourth Amendment's right to be free from unreasonable seizures."[75] With respect to a substantive due process claim for malicious prosecution, the Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"[76] The Tenth Circuit

---

grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions."). Thus, the court considers the substance of Mr. Pfundstein's federal malicious prosecution claims.

[74] ECF No. 7, ¶ 59.

[75] *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (quotations and citations omitted).

[76] *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989).

extended that holding to a procedural due process claim for malicious prosecution.[77] Analyzing

the Supreme Court's decision in *Albright*, the Tenth Circuit held:

> [N]o § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment. And although the plaintiff in *Albright* did not raise a procedural due process claim, we find *Albright*'s reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component. In the initial stages of a criminal proceeding, the Fourth Amendment protects a person's liberty interests under the constitution by ensuring that any arrest or physical incarceration attendant to a criminal prosecution is reasonable. The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context. . . . Under the facts of this case, where criminal charges were brought but dismissed before trial, [the plaintiff] must allege a violation of the Fourth Amendment in order to proceed on a theory of § 1983 malicious prosecution.[78]

Mr. Pfundstein alleges that he was charged with crimes that were dismissed prior to trial.

Thus, his section 1983 claim for malicious prosecution must be based upon a Fourth Amendment

violation and cannot be brought under the Fourteenth Amendment.[79]

---

[77] *Becker*, 494 F.3d at 918-19.

[78] *Id.* (citations and emphasis omitted); *see also Mglej v. Gardner*, 974 F.3d 1151, 1159 & n.3 (10th Cir. 2020) (stating that where criminal charges were dropped before trial, a section 1983 claim for malicious prosecution must be based on the Fourth Amendment, not the Fourteenth Amendment (citing *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017))), *cert. denied*, 141 S. Ct. 2514 (2021).

[79] Although the court concludes that Mr. Pfundstein's federal malicious prosecution claim cannot be brought under the Fourteenth Amendment, the court addresses that claim under the Fourth Amendment below.

b.    **Mr. Pfundstein Fails to Demonstrate Any Alternative Theory for Liability Under the Fourteenth Amendment.**

Although the Tenth Circuit reached the foregoing conclusion in *Becker*, it went on to state that the Supreme Court "has yet to clarify the scope of the plurality holding in *Albright*" and that "several lines of cases suggest an alternative theory of liability under the Fourteenth Amendment."[80] Thus, the Tenth Circuit went on to consider whether the plaintiff had a viable procedural or substantive due process claim that was not covered by the Fourth Amendment.[81] As shown below, Mr. Pfundstein fails to show that he has such a claim.

First, the *Becker* court addressed the plaintiff's argument that her procedural due process rights were violated because criminal charges were brought against her but dismissed before trial and she had "a liberty interest in being free from unwarranted investigation and prosecution without probable cause."[82] The court concluded that "even if . . . a procedural due process analysis applie[d]," the plaintiff had "suffered no deprivation of liberty in violation of her procedural due process rights" because: (1) "the Fourth Amendment adequately protected [her] constitutional liberty interests, and she therefore ha[d] no procedural due process claim based on pre-trial deprivations of physical liberty"; and (2) "Utah tort law provide[d] an adequate procedural due process remedy for any injuries not cognizable as a Fourth Amendment seizure."[83] Like the plaintiff in *Becker*, Mr. Pfundstein's pretrial deprivations of liberty are

---

[80] *Becker*, 494 F.3d at 919.

[81] *Id*. at 919-25.

[82] *Id*. at 919.

[83] *Id*. at 920-21.

protected by the Fourth Amendment. Additionally, Mr. Pfundstein has Utah tort law remedies available to protect any liberty interests not covered by the Fourth Amendment. Therefore, he fails to state a viable claim for violations of procedural due process.

Second, the *Becker* court addressed the plaintiff's argument that her substantive due process rights were violated through "a groundless investigation."[84] The court noted that, to state a claim for violations of substantive due process, "[t]he conduct alleged 'must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power . . . . [It] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'"[85] The court also noted that "'[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.'"[86]

With those standards in mind, the court concluded that the plaintiff's allegations about the investigation did not meet that "rigorous standard" because the alleged conduct did "not meet the affronts to personal autonomy suggested by [Tenth Circuit] case law."[87] The court stated that the

---

[84] *Id.* at 922. In addition to the plaintiff's argument concerning the investigation, the *Becker* court addressed the plaintiff's argument concerning the withholding of "material evidence tending to exonerate her." *Id.* Because Mr. Pfundstein does not raise a similar argument, the court does not address that portion of *Becker* here.

[85] *Id.* (quoting *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957-58 (10th Cir. 2001)); *see also Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) ("[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992))).

[86] *Becker*, 494 F.3d at 923 (quoting *Albright*, 510 U.S. at 272).

[87] *Id.* at 923.

plaintiff "ha[d] a number of well-defined causes of action under state and federal law to vindicate her interests" and that to allow her "[t]o rest her claims on the undefined contours of substantive due process would only introduce uncertainty and analytical confusion to an already unwieldy body of law."[88]

Mr. Pfundstein's substantive due process claims suffer from the same deficiencies as the plaintiff's claims in *Becker*. Defendants' alleged conduct is not so outrageous that it shocks the conscience or sufficiently offends the right to bodily integrity or autonomy.[89] Thus, Mr. Pfundstein fails to state a claim for violations of substantive due process.

### 2. Deprivation of Personal Property

Mr. Pfundstein asserts section 1983 claims for violations of procedural and substantive due process under the Fourteenth Amendment based upon the Defendants' alleged deprivation of his personal property. Below, the court addresses Mr. Pfundstein's substantive due process claim followed by his procedural due process claim. For the following reasons, those claims fail.

To the extent that Mr. Pfundstein's claims could be construed as asserting a substantive due process claim, they must fail for the same reasons set forth above concerning his malicious prosecution claim. Again, even assuming the truth of Mr. Pfundstein's allegations, Defendants did not engage in conscience-shocking conduct or conduct that sufficiently affects the right to

---

[88] *Id.*

[89] *Jones v. Lehmkuhl*, No. 11-CV-02384-WYD-CBS, 2013 WL 6728951, at *13 (D. Colo. Dec. 20, 2013) ("Even where a substantive due process right has been recognized, that right has been predicated on 'the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court.'" (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980))).

bodily integrity or autonomy. Accordingly, Mr. Pfundstein fails to state a claim under section

1983 for violations of substantive due process under the Fourteenth Amendment based upon the

Defendants' alleged deprivation of his property.

The court turns next to Mr. Pfundstein's procedural due process claim.[90] The Tenth

Circuit has stated that "[a] failure timely to return seized material which is without evidentiary

value and which is not subject to forfeiture may state a constitutional or statutory claim."[91]

> However, the Supreme Court has placed significant limitations on
> when such a claim may properly be raised, finding that neither
> negligent nor unauthorized intentional deprivations of property by
> state employees can constitute a violation of procedural due process
> "if a meaningful post-deprivation remedy for the loss is available."
> Thus, a state's actual "deprivation" of individual property "is not
> complete until and unless it provides or refuses to provide a suitable
> post-deprivation remedy."[92]

At the same time, "when the deprivation is not random and unauthorized, but is pursuant to an

affirmatively established or *de facto* policy, procedure, or custom, . . . the availability of an

adequate state post-deprivation remedy is irrelevant and does not bar a § 1983 claim."[93]

---

[90] Mr. Pfundstein appears to challenge both the initial seizure of his personal property and the disposition of that property. Thus, the court analyzes the disposition of the property here under a procedural due process framework and addresses the initial seizure of the property under the Fourth Amendment below. *Snider v. Lincoln Cnty. Bd. of Cnty. Comm'rs*, 313 F. App'x 85, 93 (10th Cir. 2008) (requiring courts to analyze "the propriety of the initial seizure by police under the Fourth Amendment" and "the ultimate disposition of the property" under "the protections of procedural due process").

[91] *Davis v. Gracey*, 111 F.3d 1472, 1477 (10th Cir. 1997).

[92] *Foley v. Carlsbad Mun. Schs.*, No. 1:09-CV-01147-RB-GBW, 2012 WL 13081444, at *13 (D.N.M. Feb. 17, 2012) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

[93] *Gillihan v. Shillinger*, 872 F.2d 935, 939-40 (10th Cir. 1989), *overruled on other grounds by Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010).

Mr. Pfundstein's procedural due process claim fails under that framework for several reasons. First, Mr. Pfundstein fails to show that Defendants' alleged deprivation of his personal property was pursuant to any policy, procedure, or custom of the CHPD or Cottonwood Heights. Indeed, as noted above, Mr. Pfundstein's only allegation concerning such a policy, procedure, or custom is his conclusory statement that, "[o]n information and belief, it is the policy or custom of the CHPD to take money and store credits (personal property) from accused citizens and[,] without booking [them] into evidence[,] give [them] to the accuser without due process."[94] Second, because Mr. Pfundstein fails to establish that the Defendants' alleged deprivation was pursuant to a policy, procedure, or custom that actually exists, the court is left to conclude that it was random and unauthorized. Such a deprivation cannot form the basis for a section 1983 claim for violations of procedural due process unless there is no post-deprivation remedy available to Mr. Pfundstein. Finally, Mr. Pfundstein fails to allege that there are no adequate post-deprivation remedies available.[95] To the contrary, according to Mr. Pfundstein's own allegations, he "submitted a notice of claim to [Cottonwood Heights] for $889."[96] Mr. Pfundstein also has other state-law tort remedies available, including his claim for conversion asserted in this case. For those reasons, Mr. Pfundstein fails to state a claim under section 1983 for violations of

---

[94] ECF No. 7, ¶ 31.

[95] *Foley*, 2012 WL 13081444, at *14 (citing *Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985) ("[I]n an action under 42 U.S.C. § 1983 for deprivation of property under color of law without due process, the plaintiff must prove the absence of adequate state remedies as an element of the constitutional tort.")).

[96] ECF No. 7, ¶ 34.

procedural due process under the Fourteenth Amendment based upon the Defendants' alleged deprivation of his property.

### H.    Fourth Amendment

Mr. Pfundstein alleges section 1983 claims under the Fourth Amendment for: (1) false arrest, (2) malicious prosecution, and (3) "theft of personal property."[97] The court addresses each of those claims in turn below and concludes that they all fail.

#### 1.    False Arrest

Although Mr. Pfundstein's claim for false arrest is alleged against all Defendants, the court construes it as being alleged against only Officer Griffith because the allegations of Mr. Pfundstein's complaint indicate that only Officer Griffith was personally involved with Mr. Pfundstein's arrest.[98] As shown below, Mr. Pfundstein's claim fails because his complaint does not demonstrate that Officer Griffith lacked probable cause to arrest Mr. Pfundstein.

To assert an actionable claim for false arrest under section 1983, a plaintiff "must demonstrate the elements of a common law claim and show that [his] Fourth Amendment right to be free from unreasonable search and seizure has been violated."[99] Under Utah law, the existence of probable cause is a defense to a claim of false arrest.[100] The same principle is true for alleged

---

[97] ECF No. 7, ¶ 55.

[98] Although Mr. Pfundstein names Officer Kawa as a defendant, Mr. Pfundstein makes no allegations that Officer Kawa was personally involved with the arrest. The only other individual Mr. Pfundstein alleges was involved with the arrest was "an unknown officer." ECF No. 7, ¶ 17.

[99] *Trimble v. Park Cnty. Bd. of Comm'rs*, 242 F.3d 390 (Table), 2000 WL 1773239, at *3 (10th Cir. Dec. 4, 2000).

[100] *Terry v. Zions Coop. Mercantile Inst.*, 605 P.2d 314, 320 (Utah 1979), *overruled on other grounds by McFarland v. Skaggs Cos., Inc.*, 678 P.2d 298 (Utah 1984).

violations of the Fourth Amendment in the false arrest context.[101] "Therefore, to state a claim for

false arrest, [a] [p]laintiff must allege facts sufficient to demonstrate a lack of probable cause."[102]

> [A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.[103]

"Probable cause exists 'where facts and circumstances within an officer's knowledge and of

which he had reasonably trustworthy information are sufficient to warrant a prudent man in

believing that an offense has been or is being committed.'"[104] "Probable cause only requires a

probability of criminal activity, not a prima facie showing of such activity."[105] "Since probable

cause for a warrantless arrest is determined in terms of the circumstances confronting the

---

[101] *Karr v. Smith*, 774 F.2d 1029, 1031-32 (10th Cir. 1985) (affirming directed verdict on a section 1983 claim for false arrest because probable cause existed for the arrest); *Watson v. Utah Highway Patrol*, No. 4:18-CV-00057-DN-PK, 2019 WL 11314971, at *7 (D. Utah Dec. 27, 2019) (concluding that the plaintiff's section 1983 claim for false arrest failed because the "[p]laintiff's arrest was supported by probable cause"), *report and recommendation adopted*, No. 4:18-CV-57-DN-PK, 2020 WL 6157026 (D. Utah Oct. 21, 2020); *Lawrence v. Green*, No. CIVA 07CV00361WYDCBS, 2007 WL 3090773, at *3 (D. Colo. Oct. 19, 2007) ("A claim for false arrest cannot stand if there was probable cause to arrest." (citing *Karr*, 774 F.2d at 1031)).

[102] *Carpeneter v. Okla. Cnty., Okla.*, No. CIV-09-164-D, 2009 WL 2778445, at *4 (W.D. Okla. Aug. 28, 2009).

[103] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

[104] *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (quoting *Karr*, 774 F.2d at 1031); *see also Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) ("Probable cause to arrest exists if, the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense.").

[105] *Wilder*, 490 F.3d at 813.

arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution such as dismissal of charges."[106]

Mr. Pfundstein's conclusory allegations fall well short of showing there was a lack of probable cause for his arrest. Indeed, his sole allegations concerning probable cause are: (1) Officer Griffith "discussed the situation with an unknown officer and concluded that there was no probable cause";[107] (2) when Mr. Pfundstein was released, "according to his release papers[,] there was no probable cause";[108] and (3) his criminal charge or charges were later "dropped by [J]udge Kristine Johnson for no probable cause to bind over."[109] Such conclusory allegations are insufficient under Rule 8(a)(2) and Rule 12(b)(6).[110] Additionally, Mr. Pfundstein's second and third allegations are not relevant to the issue of whether probable cause existed because they relate to events that occurred after his arrest. Furthermore, Mr. Pfundstein's claim that no probable cause existed is undermined by his own allegations, which show facts supporting a determination of probable cause for his arrest. Indeed, Mr. Pfundstein alleges that

---

[106] *Id.* at 814 (quotations and citation omitted); *see also Munday v. Johnson*, 257 F. App'x 126, 134 n.6 (10th Cir. 2007) (holding that an "arrestee's later-established innocence is not relevant to the probable cause determination").

[107] ECF No. 7, ¶ 17.

[108] *Id.*, ¶ 27.

[109] *Id.*, ¶ 46.

[110] *Carpenter*, 2009 WL 2778445, at *4 (concluding, in the context of a false arrest claim, that the plaintiff's "allegations contending the officers lacked sufficient probable cause are conclusory and insufficient to state a plausible claim for relief."); *cf. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) (holding, in the context of a malicious prosecution claim, that the plaintiff failed to state such a claim because "beyond the conclusory allegation in his complaint that no probable cause existed, [the] plaintiff ha[d] not alleged any specific facts showing there was a lack of probable cause for his arrest").

he was near the Home Depot store in question,[111] Officer Griffith "had received a call from loss

prevention at Home Depot,"[112] Ms. Johnson told Officer Griffith "that a fraud had just been

committed,"[113] and Ms. Johnson told Officer Griffith "that the store credit [Mr.] Pfundstein had

purchased the returned items with was fraudulent."[114] With those facts known to him, it was

reasonable for Officer Griffith to conclude under the circumstances that Mr. Pfundstein had

committed a crime, thereby establishing probable cause for Mr. Pfundstein's arrest. For those

reasons, Mr. Pfundstein fails to allege sufficient facts to show that there was a lack of probable

cause for his arrest, which dooms his section 1983 claims under the Fourth Amendment for false

arrest.[115]

## 2. Malicious Prosecution

Mr. Pfundstein's section 1983 claim for malicious prosecution is alleged against all

Defendants. However, the court construes it as being alleged against only Officer Griffith and

---

[111] ECF No. 7, ¶¶ 12-13.

[112] *Id*., ¶ 13.

[113] *Id*., ¶ 11.

[114] *Id*., ¶ 18.

[115] Although the court relies on a probable cause standard above and finds that Mr. Pfundstein's factual allegations fail to support a want of probable cause, the standard that would actually apply in the context of this case is the "arguable probable cause standard." *Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014)* ("In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct. Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." (quotations and citations omitted)). The facts contained in Mr. Pfundstein's complaint clearly show that at least arguable probable cause was present here.

Officer Kawa because the allegations of Mr. Pfundstein's complaint indicate that only those two individuals were involved in any way with his prosecution.[116] As demonstrated below, Mr. Pfundstein's claim fails because he fails to make any well-pleaded allegations that Officer Griffith and Officer Kawa acted with malice.

In the Tenth Circuit, to state a viable section 1983 claim for malicious prosecution, a plaintiff must satisfy the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[117] However, those elements are only "the starting point" of the court's analysis because "the ultimate question is whether plaintiff has proven the deprivation of a constitutional right."[118] With respect to the element of malice, it "requires evidence of intent, not mere negligence,"[119] and "requires that criminal proceedings are initiated primarily for a purpose other than bringing an offender to justice, or at a minimum, some wrongful or improper motive."[120]

---

[116] Mr. Pfundstein also alleges that Ms. Johnson was a witness at his preliminary hearing. ECF No. 7, ¶ 45. Because the court has already concluded that Mr. Pfundstein cannot state section 1983 claims against Ms. Johnson, the court need not address her involvement with his prosecution.

[117] *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007).

[118] *Id*. (quotations and citation omitted).

[119] *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016).

[120] *Hooper v. Pearson*, No. 2:08-CV-871, 2010 WL 2990809, at *16 (D. Utah July 26, 2010) (quotations and citation omitted) (granting summary judgment on a section 1983 malicious prosecution claim for failure to show malice).

Mr. Pfundstein fails to satisfy the required element of malice because his complaint contains only conclusory allegations concerning any conduct that could conceivably be construed as malicious. Plaintiff's only allegations against Officer Griffith and Officer Kawa that could possibly fall into that category are: (1) Officer Griffith undertook an investigation "in furtherance of a personal vendetta";[121] (2) Officer Griffith "pushed" for criminal charges to be filed against Mr. Pfundstein;[122] (3) "[Officer] Griffith drafted, and [Officer] Kawa signed under penalty of perjury, . . . a criminal complaint falsely accusing [Mr. Pfundstein] of multiple crimes";[123] and (4) Officer Griffith "testified at a preliminary hearing with the intent to have [Mr.] Pfundstein convicted of a crime that was never committed."[124] The court is not required to accept those conclusory allegations as true under Rule 8(a)(2) and Rule 12(b)(6).[125] Furthermore, even if the court were to accept them as true, they do not come close to showing that Officer Griffith or Officer Kawa acted with intent, with a wrongful or improper motive, or for any other purpose that bringing a suspected offender to justice. Because Mr. Pfundstein has not included allegations to establish one of the required elements of his section 1983 claim for malicious prosecution, that claim fails.

---

[121] ECF No. 7, ¶ 38.

[122] *Id*., ¶ 40.

[123] *Id*., ¶ 44.

[124] *Id*., ¶ 45.

[125] *Bellmon*, 935 F.2d at 1110 ("[I]n analyzing the sufficiency of [a pro se] plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.").

### 3.       Deprivation of Personal Property

As with his prior two claims, Mr. Pfundstein's claim for deprivation of personal property is alleged against all Defendants. Nevertheless, the court construes it as being alleged against only Officer Griffith because Mr. Pfundstein's alleges that only Officer Griffith was personally involved with the deprivation. Mr. Pfundstein's claim necessarily fails because the court has concluded that his claim for false arrest fails.

Above, the court concluded that Mr. Pfundstein fails to allege sufficient facts to show that there was a lack of probable cause for his arrest, which is fatal to his section 1983 claims under the Fourth Amendment for false arrest. The same conclusion dooms his Fourth Amendment claim for unreasonable seizure of his personal property because the existence of probable cause—or at least "arguable probable cause"—means that his arrest was lawful, and, therefore, Officer Griffith's search and seizure incident to Mr. Pfundstein's arrest was likewise lawful. Indeed, the Supreme Court has stated:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.[126]

Given that Officer Griffith's arrest of Mr. Pfundstein did not offend the Fourth Amendment, it must follow that Officer Griffith's search of Mr. Pfundstein and seizure of Mr. Pfundstein's personal property were not violative of the Fourth Amendment.  Therefore, Mr.

---

[126] *United States v. Robinson*, 414 U.S. 218, 235 (1973).

Pfundstein's section 1983 claim under the Fourth Amendment for deprivation of his personal property fails.

## II.     The Court Declines to Reach the Merits of Mr. Pfundstein's State-Law Claims

In addition to his federal claims addressed above, Mr. Pfundstein asserts state-law claims for malicious prosecution, violations of the Utah Constitution, and conversion. "Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction."[127] However, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[128]

The court has concluded that all of Mr. Pfundstein's federal claims fail. Because Mr. Pfundstein's remaining claims are all based upon state law, the court declines to reach the merits of those claims here because, without any viable federal claims, the court should decline to exercise supplemental jurisdiction over his state-law claims.

## III.    The Court Provides Mr. Pfundstein With an Opportunity to Amend His Complaint.

As stated above, after reviewing a pro se plaintiff's complaint under the IFP Statute, the court may dismiss the complaint for failure to state a claim "only where it is obvious that the

---

[127] *Brock v. Herbert*, No. 2:09-CV-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012).

[128] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations and citations omitted).

plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[129] The court concludes that it is appropriate to provide Mr. Pfundstein with the opportunity to amend to address the deficiencies with his complaint described above. Mr. Pfundstein must file an amended complaint on or before March 11, 2022.  Failure to do so will result in the court recommending dismissal of this action.

<u>**CONCLUSION AND ORDER**</u>

Based upon the foregoing analysis, IT IS HEREBY ORDERED that Mr. Pfundstein must file an amended complaint on or before March 11, 2022.  Failure to do so will result in the court recommending dismissal of this action.

IT IS SO ORDERED.

DATED this 10th day of February 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[129] *Kay*, 500 F.3d at 1217 (quotations and citation omitted).